IN THE

# United States District Court for the District of Maine

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | Case#: |
| *Plaintiff,* | ) | |
| | ) | Hon. |
| v. | ) | Judge Presiding |
| | ) | Hon. |
| STATE OF MAINE | ) | Magistrate Judge |
| VOCATIONAL REHABILITATION, | ) | |
| *Defendant.* | ) | |
| | ) | JURY TRIAL NOT DEMANDED |

## COMPLAINT

COMES NOW, *pro se Plaintiff* ANDREW U. D. STRAW (hereinafter "Plaintiff"), individually, hereby state as follows as a person with severe disabilities alleging ADA Titles II violations for failure to communicate with me for 7 months when I was approved for services in 2023, denying me services during that time. To wit:

### FACTS: ADA & CAMP LEJEUNE WATER CONTAMINATION

1. This Complaint alleges a federal cause of action and is brought solely pursuant to 42 U.S.C. § 12132 for discrimination by a State of Maine agency, and the ADA Title II regulations promulgated by U.S. Department of Justice.

2. I have been a graduate student at University of Maine since 2023 admission and took one class in 2024, earning an A grade.

3. I withdrew from 2 classes in Fall 2024 when my brother and my ex-partner (2018-2024) ran off together, injuring me severely emotionally.

4. I was granted Medical Withdrawal from graduate studies as this Court is aware. *Straw v. University of Maine*, 1:25-cv-00325-JAW-KFW (D.Me. 2025)

1

5. I was granted Maine Vocational Rehabilitation eligibility in 2023. (**Ex. 1**)

## DISABILITIES & DISABILITY ADVOCACY

6. I was born at Camp LeJeune, North Carolina, during the toxic water time. *Straw v. Wilkie*, 32 Vet. App. 374, 375 (2020); *Straw v. Wilkie*, 20-2090, 843 F. App'x 263 (Fed. Cir. 1/15/2021).

7. See also: 38 CFR § 17.400(b)(xiv) (neurobehavioral effects)

    https://www.law.cornell.edu/cfr/text/38/17.400

8. **Schizophrenia** is one of my claimed illnesses from that exposure. *Straw v. U.S.*, 7:23-cv-162-BO-BM (E.D.N.C.) (**Dkt. 55** Short Form Complaint; *IFP* granted 5/6/2024 at **Dkt. 82**); *Camp Lejeune Water Litigation v. United States*, 7:23-cv-00897 (E.D.N.C.)

9. https://www.courtlistener.com/docket/66839685/straw-v-united-states/

10. https://www.courtlistener.com/docket/66839685/82/straw-v-united-states/

11. https://www.courtlistener.com/docket/67266149/camp-lejeune-water-litigation-v-united-states/

12. https://camplejeunecourtinfo.com/faq/

13. See: http://organs.andrewstraw.com and http://cljaclaims.andrewstraw.com and http://disabilities.andrewstraw.com are some of my advocacy.

14. I have been an advocate for the child victims for over 10 years and founded this FB group: **Children of Camp LeJeune**.

    https://web.facebook.com/groups/ChildrenofCampLeJeune

15. I also founded **Disability Party**: https://web.facebook.com/DisabilityParty

## ADA TITLE II

16. State actors are covered by ADA Title II. *Barnes v. Gorman*, 536 U.S. 181 (2002). The humiliation in *Barnes* mostly on one single day was worth $1,000,000 in compensatory ADA Title II damages, allowed by the Supreme Court. I ask only 10% of that amount for failure to communicate with me, leaving me bereft of services for which I was vetted in 2023 and GRANTED.

17. My case against University of Maine was dismissed voluntarily after an agreement with the University.

## MAINE VOCATIONAL REHABILITATION FACTS

18. I was granted Maine Vocational Rehabilitation (VR) eligibility by a letter issued from that agency. **Exhibit 1**.

19. The agency officer assigned to me after that was Samantha J. Fenderson.

20. I asked for supports for my graduate studies several times via email and Maine VR never offered any kind of financial support for my studies, saying that if I have student loans, I can't have more than what that provides.

21. When things went sour with my university instructors, I asked Maine VR if it would help me establish **a different vocational plan**. I wanted to set up a disability rights federal law firm that covers the First Circuit, including the Maine area.

22. I wanted to use Maine VR services to help pay for my Indiana law license to be removed from Indiana's suspension that I have opposed and that Virginia State Bar called "a drive-by shooting" since I used to work for the Indiana

Supreme Court and its chief justice. *Straw v. LinkedIn*, 5:22-cv-7718-EJD (N.D. Cal. 2023) (**Dkt.** 22-21)

23. My MS Outlook email indicates that I have written to Ms. Fenderson multiple times since **December 2024**. The last time she responded to me was December 26, 2024. (**Exhibit 2**) In that email, I was asking to change my plan and goals.

24. I wrote to her on **June 21, 2025**, regarding the change in objectives. She did not respond.

25. I wrote to her on **June 1, 2025**, regarding establishing a different employment goal. She did not respond.

26. I wrote to her about my VCF 9/11 compensation being denied on **May 25, 2025**. She did not respond.

27. I wrote to her hoping to get financial help with a maintenance allowance on **May 25, 2025**. She did not respond.

28. I wrote to her regarding getting VR help with various lawsuits that would help me rehabilitate as a lawyer doing disability rights work on **May 25, 2025**. She did not respond.

29. I wrote to her on **May 21, 2025**, along with a communication to the Indiana Supreme Court to help me get my Indiana law license out of suspension with VR's help. She did not respond.

30. I copied Ms. Fenderson on other emails about my litigation to get compensation and rehabilitate me as a lawyer on various occasions. I CC'd her on 7/5, 6/24,

6/15, 6/9, 6/7, 6/5, 6/3, 5/30, 5/22, 2/3, and 1/24 since her last response to me on 12/26/2024.

31. Thus, **11 copied emails** to her with no response.

32. The **6 direct emails** I sent to her resulted in no response either.

33. Thus 15 direct and copy emails to Samantha J. Fenderson without any response since December 26, nearly 7 months ago.

34. The last time she responded to something I wrote her, **December 26, 2024**, **Exhibit 2**, it appeared from the signature bloc that she had been promoted. This was the signature:

> Samantha Fenderson, MA, CRC
> **Director**, Division of Vocational Rehabilitation
> 150 State House Station
> Augusta, ME 04330
> PH: (207) 754-1726
> Email: samantha.j.fenderson@maine.gov

35. On **April 29, 2024**, her signature indicated that she was Acting Director of Maine VR in Augusta:

> Samantha Fenderson, MA, CRC
> **Acting Director**, Division of Vocational Rehabilitation
> PH: (207) 754-1726
> Email: samantha.j.fenderson@maine.gov

36. On **February 22, 2024**, her signature indicated she was the Assistant Director of Maine VR in Augusta:

> Samantha Fenderson, MA, CRC
> **Assistant Director**, Division of Vocational Rehabilitation
> PH: (207) 754-1726
> Email: samantha.j.fenderson@maine.gov

37. Assistant Director was her title in December 2023, when I was referred to her by Sue Primiano of Maine VR.

38. Sue Primiano's signature bloc showed this was her title in November 2023, when she sent me my eligibility letter (**Exhibit 1**)::

    Sue Primiano
    Special Projects Team Leader
    Division of Vocational Rehabilitation
    Augusta, Maine 04333
    Suzanne.Primiano@maine.gov
    207-816-0225

39. Academic studies are necessarily a lonely sort of activity in that my schoolwork has to be done **directly by me** and there are deadlines on a nearly daily basis that were stressful to me, especially when the federal government suspended my SSDI in February, causing my health to start deteriorating even more than it had from my brother's affair with my caregiver. My doctor told me to withdraw because these deadlines and responsibilities as a graduate student were aggravating my schizophrenia. *Straw v. University of Maine*, **Dkt.** 1-3.

40. I have felt during this process of disengaging from graduate studies over the past few months that a better approach to me having a lucrative career again would be to plan a law firm in my area of interest (disability law issues) and get my law licenses in order to be able to seek admission to the First Circuit U.S. Court of Appeals like my admission at the Fourth Circuit U.S. Court of Appeals, which I have maintained since 1999, over 26 years.

41. I have money coming later. My Camp LeJeune Justice Act (CLJA) claim for my mother's wrongful death is for $51,000,000. My claims for myself amount to $106,000,000. *IFP* was granted at **Dkt.** 82 of that case. See, **Dkt.** 55 SFC.

42. I had hoped to be able to use VR financial supports to pay for getting my Indiana law license back as well as my federal licenses in INND and INSD. That would enable me to seek admission to the First Circuit. With that admission, I could have an appellate practice with paralegals and associates and partners for disability rights in Maine as well as the other states in the First Circuit.

43. See: https://www.ca1.uscourts.gov/sites/ca1/files/admission.pdf & https://www.ca1.uscourts.gov/attorney-admissions

44. Having a law firm with other professionals around me would remove many of the pressures I have faced as a lawyer who has **no justice** and has to proceed *pro se* and without the supports of a law firm around. This would include paralegals, associates, AI helpers, and other partners, ideally some of them other people with disabilities since that is the whole point.

45. The ADA requires state agencies under Title II to communicate effectively with people who have disabilities. While this may often mean providing communication in a format that deaf or blind people can access, if no communication is done for 7 months when a disabled person with an eligibility letter is simply ignored, that should violate this duty also. Just as much as not providing Braille or having ASL interpreters.

46. The failure to provide supports and services has led other state vocational rehabilitation programs to be sued under Title II of the ADA. *Lane v. Kitzhaber*, 3:12-cv-00138-ST (D. Ore.):

47. https://www.justice.gov/jmd/media/1237496/dl - (**numbered paragraph 5**)

    > Title II of the ADA prohibits the unnecessary segregation of persons with disabilities. 42 U.S.C. § 12132; Olmstead v. L.C., 527 U.S. 581, 600 (1999). It requires states and other public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); see also 29 U.S.C. § 794(a); 28 C.F.R. § 41.51(d).

48. Maine VR was aware that I was communicating and seeking help with a vocational rehabilitation plan change and thus was asking for services.

49. After communicating with me regularly and promptly from November 2023 until December 2024, suddenly **all communication ceased**.

50. I was **not informed** that I was no longer eligible. My **Exhibit 1** shows I was found eligible; now I am ignored for 7 months by the ==MAINE VR DIRECTOR==.

51. I asked for specific services, help getting law licenses reinstated and help becoming a disability rights lawyer in the First Circuit area, including Maine.

52. Not communicating with me at all put me in the position of being ==denied all services== that Maine VR was capable of giving me. I don't even know what the full list of service and support options are **without communication**.

53. After so many months of prompt responses, to suddenly refuse to communicate with me for 7 months with my **desire for a change of plans apparent** and obvious and awaiting response in my **Exhibit 2**, the lack of communication must be deemed ==**"deliberate indifference."**==

54. Deliberate indifference has been held to be enough for ADA Title II damages. *Reed v. Illinois*, — F.Supp.3d —, 2015 WL 4727754 (N.D. Ill. Aug. 10, 2015).

55. See:

    > In *Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 264 (3d Cir. 2013), the district court explained that discrimination against handicapped individuals is "most often [] the product not of invidious animus, but rather of **thoughtlessness and indifference**," and that the ADA and Rehabilitation Act of 1973 are thus "targeted to address more subtle forms of discrimination than merely obviously exclusionary conduct" (internal quotations and citations omitted).

56. *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 4 (1st Cir. 2000) notes that Title II of the ADA "is modeled on § 504 of the Rehabilitation Act" and that the court "relies interchangeably on decisional law applying § 504."

57. Maine VR **had knowledge** that I am disabled and am eligible for its services but **failed to act** to help me **obtain services** when I kept writing for about 7 months with no response. This **disregarded my ADA rights** and rights under the laws governing Vocational Rehabilitation.

58. That kind of deliberate failure from the Director of the VR Agency herself should be considered disability discrimination founded on "deliberate indifference" which is a kind of deliberate discrimination covered by the ADA, Title II, since that civil rights category (disability) is the whole reason I was granted eligibility in 2023.

59. I am on SSDI at $1,466 per month. (**Exhibit 3**). That SSDI, adjudicated and GRANTED 17 years ago in 2008 is the reason I was GRANTED Maine VR eligibility for services. And of course *IFP* in *Straw v. University of Maine*.

60. 7 months with me sending so many different emails directly and as copies shows Maine VR is discriminating in communications with me and the method is **deliberate indifference**.

61. I can't update my VR plan without communication with VR.

62. I can't receive any benefit if no communication happens.

63. Thus, with the total lack of communication from December 2024 to present, I have been denied the services of an agency that *says I am eligible* for their services due to my permanent disabilities and SSDI beneficiary status.

## JURISDICTION AND VENUE

64. At all times relevant to the allegations contained within this Complaint, Defendant was a state actor whose employees' actions are at issue here.

65. Defendant is liable for damages caused to Plaintiff as a result of the acts and omissions complained of herein, which were performed by agents, servants, and/or employees acting or omitting within the course and scope of their employment with Defendant.

66. Defendant is liable under the ADA, Title II, I claim. 42 U.S.C. § 12132 and its DOJ implementing regulations.

67. The United States District Court for the District of Maine has jurisdiction on these facts because the alleged violations occurred in Maine. This Court has jurisdiction pursuant to **28 U.S.C. § 1331** as federal law ADA questions are raised. Moreover, the amount in controversy exceeds $75,000, exclusive of interest and costs.

## THE PLAINTIFF

68. Plaintiff Andrew U. D. Straw is currently a resident of San Juan, Occidental Mindoro, The Philippines.

69. Physical ADDRESS, PHONE, & EMAIL :

    Sitio Boundary, Aniar Residence
    Brgy Mapaya III
    San Jose
    Occidental Mindoro 5101
    The Philippines
    (63) 956-892-6403 (Cell)
    andrew@andrewstraw.com

70. USA contact information:

    9169 W. State St # 690
    Garden City, ID 83714-1733
    Mobile Phone: (847) 807-5237
    andrew@andrewstraw.com
    http://www.andrewstraw.com

## CONGRESS ABOLISHED IMMUNITIES

71. Defendant is not immune. 42 U.S.C. § 12202

## COUNT I: ADA TITLE II & DISCRIMINATION AS "DELIBERATE INDIFFERENCE"

72. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

73. Plaintiff seeks compensatory damages only that the Court may find appropriate on the facts after a bench trial.

## CLAIM FOR RELIEF

74. Plaintiff respectfully requests the Court to enter judgment against the STATE OF MAINE, VOCATIONAL REHABILITATION AGENCY, and award damages and all other appropriate relief for the harm to Plaintiff Andrew U. D. Straw that was caused by the acts and **omissions** of Defendant by its employees and officers.

75. Damages for **Count I** should be set at $100,000.

76. Attorney and expert fees should be authorized for plaintiff. 42 U.S.C. § 12205.

77. Plaintiff Andrew U. D. Straw also seeks **an injunction** to prevent any further injuries or retaliation.

## TRIAL DEMAND

78. Plaintiff requests a bench trial.

## *IN FORMA PAUPERIS* & SERVICE OF SUMMONS & COMPLAINT

79. Plaintiff seeks *IFP* status to pursue his claim. This Court has granted Plaintiff *IFP* status last month. *Straw v. University of Maine*.

80. Service of the summons and complaint is by the Court under FRCP 4(c) and 28 U.S.C. § 1915(d) should *IFP* be granted. Like with University of Maine, I will seek waiver of service with a notice of lawsuit once a case number is assigned.

I, Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury.  Signed: July 9, 2025.

        Respectfully,

*[signature: Andrew U. D. Straw]*

s/ ANDREW U. D. STRAW
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that on July 9, 2025, I sent this **COMPLAINT** with 3 **EXHIBITS**. Included herewith are a **COVERSHEET** and **APPLICATION FOR** *IFP* **STATUS** and **ENOTICE**, via email to the Clerk of Court. Counsel for Defendant is the Attorney General of Maine, Aaron Frey. The email sent to the Clerk of Court is copied to the Attorney General's email address: attorney.general@maine.gov

Respectfully submitted,

*[signature]*

s/ ANDREW U. D. STRAW
*Pro Se Plaintiff*
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com


### EXHIBIT LIST

- Exhibit 1: Eligibility Letter from Maine VR
- Exhibit 2: Last Email from Maine VR, 12/26/2024
- Exhibit 3: SSDI Benefit Letter Dated 6/5/2025, with correct PH address

## EXHIBIT LIST

- **EXHIBIT 1** – Financial Aid Grades Message, 6/13/2025, accessed 6/14/2025
- **EXHIBIT 2** – Failing grades in University of Maine record, 6/14/2025
- **EXHIBIT 3** – Dr. Sulit Schizophrenia Certification, 6/4/2025